575 A.2d 63

FLEET MORTGAGE CORP., PLAINTIFF, v. JOHN STEVENSON AND MARGARET STEVENSON, AND MR. STEVENSON, HUSBAND OF MARGARET STEVENSON; STATE OF NEW JERSEY; UNITED STATES OF AMERICA; BURLINGTON COUNTY, AND ANTHONY SCIOTTO, DEFENDANTS.

Superior Court of New Jersey
Chancery Division Burlington County

February 22, 1990.

*Elaine Thomson* for plaintiff (*Shapiro & Martone,* attorneys).

*Carole A. Quattlander* for defendant Burlington County (*Michael J. Hogan,* Solicitor of Burlington County, attorney).

WELLS, A.J.S.C.

This is a mortgage foreclosure, covering property in Willingboro, against John and Margaret Stevenson and Mr. Stevenson husband of Margaret Stevenson. The complaint alleges a note for $45,879.00 and a mortgage were executed on April 27, 1984 and the mortgage recorded on May 2, 1984 in the Clerk's office in Burlington County. It also alleges the mortgage "was a purchase money mortgage and was given to secure a portion of the purchase price." Of the named defendants, none except Burlington County filed an answer. The allegations against the county are found in subparagraphs 1. and 2. of paragraphs 12 and 13 and recite:

12. The following instruments or liens appear of record in the Office of the Clerk of BURLINGTON County which affect or may affect the premises described herein all of which instruments or liens are subordinate to the lien of the mortgage set forth in paragraph 2 above.

1. Burlington County is made a party defendant by virtue of a lien claim filed against John Stevenson, Sr. and John Stevenson, Jr. recorded on December 14, 1981 in Book K at page 131 as Docket No. 8402 in the amount of $107.50.

2. Burlington County is made a party defendant by virtue of a lien claim filed against John & Ethel Stevenson recorded on December 14, 1981 in Book K at page 130 as Docket No. 8401 in the amount of $541.30.

13. Any interest or lien which any of the defendants herein has or claims to have in or upon the said mortgaged premise or some part thereof is subject to the lien of plaintiff's mortgage.

The county's answer admitted the allegations of paragraph 12 but denied those of paragraph 13. Plaintiff filed a motion

for summary judgment asserting in its brief that its mortgage had priority under the terms of *N.J.S.A.* 46:9–8 notwithstanding that its purchase money mortgage was recorded after the county's liens. The county filed a cross motion asserting its liens arose out of hospital services provided the Stevensons and have priority. The county seeks the imposition of a constructive trust against the proceeds generated from the [sheriff's] sale of the premises. Plaintiff's brief asserts that the county's motion is "procedurally" lacking because it has not established that the Stevensons named in its liens are the same Stevensons named in its complaint. That issue is not, however, as a practical matter, material to the present motions relating to priorities. If plaintiff prevails, the county's liens are unaffected, if indeed, the Stevensons named in the foreclosure are not in fact the Stevensons named in plaintiff's complaint. On the other hand, if the county prevails, the issue would then become critical for plaintiff whose burden it would be to prove at a hearing that the Stevensons named as defendants and aliened by the county as recipients of assistance were different persons of the same or similar name. That is so, in my opinion, because it was plaintiff who, in good faith based upon a judgment search, chose to join the county thereby raising a presumption that the Stevenson defendants were also the persons who accepted county assistance.

I turn to the merits. The county's sole argument is based upon policy considerations surrounding *N.J.S.A.* 44:5–19.1 *et seq.*, an enactment passed in 1957 and entitled:

> An Act providing for the filing of liens for the cost of the furnishing of medical care and hospitalization by counties in institutions other than public institutions and providing means for compelling relatives responsible for the support of persons receiving such service to pay the cost thereof to the county. [*L.*1957, *c.* 139 at 530]

The first of the ten subsections of the act provides:

> The board of chosen freeholders of any county, which furnishes medical care and hospitalization to resident indigent patients who cannot be maintained by private means, in a hospital or hospitals supported by private charity, on a per diem patient basis, shall have a lien against the property of any person receiving such service in an amount equal to the cost of the county of the

maintenance of such person in such hospital, which lien shall have priority over all unrecorded encumbrances.

Upon filing, the lien is "binding upon any goods, rights, credits, chattels, moneys or effects which are held, for the present or subsequent use, of the person against whom the lien is filed, by any person. . . ." *N.J.S.A.* 44:5–19.6. The liens filed with the county clerk attach to, and are binding upon, all real property owned by the patient in that county and have the force and effect of a judgment at law. *N.J.S.A.* 44:5–19.4 Despite its existence for more than 30 years the act has never been construed by any court.

The county's principal argument is grounded in consideration of public policy:

> The legislation of which *N.J.S.A.* 19:5–19.1 is a part is an acknowledgment that the needy residents of New Jersey should have access to hospitalization and not go untreated for lack of funds. *See N.J.S.A.* 44:5–2 to 44:5–19. As such, this legislation is an expression of public policy superior to the interest of any individual or private entity. . . .
>
> The public interest warrants a conclusion that liens such as those held by the Board here should be deemed superior to purchase money mortgage interests. Public funds were utilized to pay for the hospital care of the Stevensons. Plaintiff and its assignor were on record notice of the County's claim—quite obviously, a governmental claim.

The court has carefully weighed this thoughtful argument. In doing so, I note that the statute granting priority of purchase money mortgages has been a fixture of N.J. law since 1820. 29 *N.J. Practice (Cunningham & Tischer, Law of Mortgages with Forms)* § 110 at 482. I also note that their special priority can be asserted against: (1) claims of dower curtesy by the purchaser's spouse, (2) the lien of judgments, (3) mechanics liens, (4) mortgages executed before the purchase of the land, and (5) federal tax liens filed against the purchaser before he acquired title. *Ibid.* The rationale behind such an historic and thoroughgoing priority is found essentially in the equity which results from providing the wherewithal to purchase the property:

> On the whole, it seems more satisfactory to explain the special priority of the purchase money mortgage on the broad ground that it is just and equitable to give priority to a vendor who has parted with the title to land, or a third party

who has loaned the money with which the purchase is made, on the strength of an agreement that the purchase money obligation shall be secured by a first mortgage upon the land, as against the pre-existing but inchoate claims of the purchaser's spouse, judgment creditors, and the like. Certainly the purchase money mortgagee has an equitable claim which outweighs the claim of spouse to dower or curtesy, or the spouse in such a case is a mere "volunteer." Just as clearly, the purchase money mortgagee's equitable claim is stronger than that of a prior judgment creditor, who neither extended credit nor prosecuted his suit to judgment in reliance on his debtor's ownership of the property later conveyed to him; or that of a mechanics' lien claimant who performed work at the request of the purchaser before he acquired title thereto, where the vendor did not consent in writing to such performance; or that of a prior mortgagee who took his mortgage before the mortgagor acquired title to the land to secure a non-purchase money obligation. [*Id.* at 486]

Particularly telling in this case is the notion that the county extends aid to indigents, without foreseeable expectation that it will be repaid out of property not then owned by the indigent, in the same way that a judgment creditor "neither extend(s) credit nor prosecute(s) his suit in reliance on his debtors ownership of the property later conveyed to him...." As so viewed, the award of priority to a hospital lien in cases such as this would give the county a windfall not accorded other judgment creditors, mechanics or the federal government. It would make less secure, and thus, less available mortgage money to purchase property and tend to defeat the public policy interest in home ownership.

Counsel for the county seeks to expand the record on this motion by submitting the results of an informal survey she took of certain banking institutions. Seven written responses were received. Plaintiff opposed the motion. For what it is worth, the survey seems to show that banks generally perform credit checks on prospective mortgage loan customers including a Superior Court and lower court judgment search. Generally, but not invariably, the responding banks require that judgments or liens be satisfied as a condition of the mortgage loan.

Counsel argues on the basis of these facts that since the liens are readily discoverable the mortgagee is duty-bound "to either include the amount of the health care facilities claim in the ... mortgage or to secure the agreement of the governmental

entity to the loan without inclusion of the entity's claim." The survey, however, seems to suggest that in most cases banks require satisfaction of a county lien as a condition of granting a mortgage. If so, the existence of the lien has had its salutary effect of enforcing satisfaction of the obligation to the public. To deny, however, a bank its purchase money priority in those few cases where the lien is not unearthed or is ignored is to chill long-established lending practices for which there is not, in my view, a compelling policy trade-off. While I acknowledge the respected idea that the largesse of the taxpayer should be recompensed, it does not sweep away other equally respected and long established principles of law and equity.

The court concludes that when all is said and done public policy is not so clearly or convincingly on the side of awarding priority to a county hospital lien over a purchase money mortgage. Furthermore, had the Legislature desired such a result, it could have specifically embodied that direction in *N.J.S.A.* 44:5-19 *et seq.* In the absence of a clear manifestation to the contrary, the court will not impute to the Legislature an intention to change the law. *Cf. State v. Dalglish*, 86 *N.J.* 503, 512, 432 *A.*2d 74 (1986); *Elberon Bathing Co. v. Ambassador Ins. Co.*, 77 *N.J.* 1, 17-18, 389 *A.*2d 439 (1978).

For these reasons the court will grant plaintiff's motion and deny defendant's.